**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

ALBERT LEE JOHNSON, PLAINTIFF
ADC #86314

V. 5:12CV00361-KGB-JJV

UNITED STATES OF AMERICA; *et al*. DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

**DISPOSITION**

## I. INTRODUCTION

Plaintiff Albert Lee Johnson is an inmate at the Varner Unit of the Arkansas Department of Correction (ADC). He filed this action *pro se* pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), *et seq*.; *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); 42 U.S.C. §§ 1983 and 1985; and state law, against the United States of America and individual federal and state officials. The allegations in his Amended Complaint include negligent reduction of his Veteran's Administration (VA) disability retroactive benefits; due process violations associated with delays in distribution of his benefit checks; conspiracy to interfere with his civil rights; denial of equal protection, freedom of expression, freedom of association and freedom to practice his religious beliefs; and denial of his right to be free from the unreasonable seizure of property; conversion; and negligent infliction of emotional distress (Doc. No. 27). Plaintiff asks for injunctive, declarative, and monetary relief from Defendants.

Pending before the Court is the Motion for Summary Judgment filed by the remaining defendants[1, 2] (Doc. Nos. 62-64), and Plaintiff's Motion for Partial Summary Judgment together with

---

[1]Federal Defendants United States of America, Lori Cossey, and unnamed VA employee John Doe # 1 were dismissed on March 25, 2014, based on a lack of subject matter jurisdiction.

numerous exhibits (Doc. Nos. 65-72). Responses to the Motions have been filed (Doc. Nos. 78-80.) Having carefully reviewed the Motions and Responses and Exhibits, the Court finds Defendants' Motion should be granted based on qualified immunity, for the following reasons.

## II. FACTS

Plaintiff is a disabled veteran who served in the United States Army from October 15, 1973, to November 27, 1973. (Doc. Nos. 27 at 11; 31-1 at 10.) He was incarcerated in Arizona from April 1979 to November 1982, and from July 1983 to August 1984. (Doc. Nos. 27 at 11; 31 at 58.) He then was incarcerated in Arkansas from June 1986 to January 2006, and again in January 2008 with a release eligibility date of August 1, 2031. (*Id.*) In April 1995, the VA granted his claim for service-connected disability compensation at a disability rating of 30 percent, noting that benefits would be paid at a rate of 10 percent for a veteran incarcerated longer than sixty days following conviction of a felony committed after October 7, 1980. (Doc. Nos. 2-1 at 5-8; 27 at 11-12; 31-1 at 1.) Plaintiff disagreed with the January 17, 1991, effective date of those benefits, and filed a claim with the VA regional office. (Doc. Nos. 27 at 12; 31-1 at 2.) Litigation followed, and the parties settled in August 2009, with the VA granting Plaintiff an earlier effective date of August 14, 1979, and awarding him residual benefits. (Doc. Nos. 27 at 16-17; 31-1 at 5-19.)

In October 2009, the VA notified Plaintiff that his residual benefits for August 14, 1979, to January 17, 1991, would be reduced from 30 percent to 10 percent, because of his incarceration. (Doc. Nos. 27 at 17; 31-1 at 14-19.) When Plaintiff did not receive the check for those benefits, he filed a grievance on October 26, 2009, naming Defendant Smallwood, the Varner Unit business

---

(Doc. No. 55.)

[2]Plaintiff has not identified "John Doe #2, Trust Fund Centralized Banking Personnel, in Pine Bluff, Arkansas." (Doc. No. 27 at 9.) So this Defendant should be dismissed without prejudice.

manager, and questioning his failure to receive the check. (*Id*. at 21.) Smallwood responded that the check had not been received, and in a telephone call to the VA hotline, Plaintiff was informed the check had not been issued. (*Id*.) Shortly after this, Plaintiff's Rule 37 post-conviction petition was denied by the Arkansas Supreme Court on November 5, 2009. (*Id*.)

A VA check for $12,651.57 was issued to Plaintiff on January 14, 2010, and received in the Varner Unit mail room sometime before January 25, 2010. (*Id*. at 23.) Pursuant to ADC procedure, Defendant Conrad, the mail room supervisor, forwarded the check to Defendant Smallwood. (*Id*. at 24; Doc. No. 69 at 5, 9-10.) Smallwood then forwarded the check to the Trust Fund Centralized Banking Office (TFCB) for processing. (Doc. No. 69 at 10.) Because the VA check was not the usual monthly amount received by Plaintiff, Regina Goldman, an employee of TFCB, instructed staff member Marilyn Hutcheson to call the VA to verify that the check could be deposited. (*Id*. at 46.) Ms. Cossey at the VA instructed Hutcheson to mail the check back to the VA, and Goldman notified Smallwood by email of the status of the check. (*Id*. at 46-47, 60, 62.)

Plaintiff became aware that the check was returned to the VA when he called the VA help line again on March 4, 2010. (Doc. No. 27 at 25.) The VA sent Plaintiff a corrected award letter on June 2, 2010, and a letter on September 23, 2010, which notified him that his payment would be received in ten days. (*Id*. at 35, 39; Doc. No. 31-1 at 20-27.) On October 1, 2010, Plaintiff received a check from the VA in the amount of $13,748.00 (Doc. Nos. 27 at 40; 31-1 at 2.) Plaintiff filed a Notice of Disagreement with the VA on May 30, 2011, disputing the reduction of his residual benefits from 30 to 10 percent, claiming it violated his August 2009 settlement agreement with the VA, and asking for an additional $10,603.00 in residual benefits. (Doc. No. 31-1 at 28-33.) The VA issued a decision on June 7, 2013, denying his objection and concluding that the reduction of his disability benefits from 30 percent to 10 percent due to incarceration for any period after October

7, 1980, was valid and Plaintiff was not entitled to any amounts in excess of that awarded to him. (Doc. No. 31-1 at 57-59.)

After Plaintiff became aware that the January 2010 residual benefits check was returned, he filed several grievances complaining that Defendants Smallwood, Conrad, and other ADC officers failed to provide him proper notice before returning the check to the VA, as provided in ADC policy which requires notice of returned mail. He also alleged their actions were in retaliation for grievances he filed against them. (Doc. No. 27 at 27- 38.) Defendants Evans, May, Harris, Meinzer, and Banks responded to those grievances and appeals, finding them without merit, and noting that the check was returned at the direction of Ms. Cossey at the VA. (*Id.*)

During this time, Plaintiff continued to receive his monthly VA benefits but, because of alleged retaliation by Defendant Smallwood, often did not receive them properly at the beginning of each month. (Doc. No. 68 at 3-38.) In addition, the February 2011 check was posted to the wrong inmate account, and was not posted to his account until November 2011. (*Id.* at 29; Doc. No. 69 at 64.) Plaintiff claims these incidents are additional evidence of Smallwood's retaliation.

Finally, Plaintiff complains that two attempts to send withdrawals of money to his sister were improperly prevented by Defendants Meinzer and Gibson. (Doc. No. 27 at 40-42.) On October 13, 2010, Meinzer denied Plaintiff's request to send $6,500 to his sister to hire an attorney for him and help out his family, stating, "need this broke down," because the ADC was in the process of adopting a policy requiring inmates to produce documentation which verified/legitimized their requests. (Doc. Nos. 27 at 40-41; 72 at 33.) Similarly, a request on November 9, 2010, to send $500.00 was denied for failure to provide verifying documentation as required by policy. (*Id.* at 35.)[3] ADC

[3] A request for $11,000 to be paid to attorney Sheila Campbell for legal services was approved on February 1, 2011. (Doc. No. 72 at 43-52.)

Administrative Directive (AD) 10-29 was approved on November 5, 2010, by Defendant Ray Hobbs, and Plaintiff claims it is unreasonably vague and overly restrictive. (Doc. Nos. 27 at 42; 69-1 at 167.)

Based on the above facts, Plaintiff alleges the following:

1) Denial of due process, based on the deprivation of his property and the lack of notice of the return of his residual benefits VA check by Defendants Conrad and Smallwood;

2) Denial of due process, based on the failure of those two Defendants to promptly deliver his monthly VA checks within forty-eight hours of receipt;

3) Denial of due process by Conrad, Smallwood and Goldman, due to their arbitrary and wrongful seizure of the VA residual benefits check;

4) Denial of due process by defendants Hobbs, Harris, May, Banks, Meinzer, Gibson, and Smallwood, due to the implementation of AD 10-29 and restrictions on disbursement of Plaintiff's property;

5) Denial of due process by Defendants Hobbs, May, Evans, Harris, Banks, Meinzer and John Doe #2, based on their authorization of the conduct of Defendants Smallwood, Goldman, and Conrad, and failure to condone their wrongful actions;

6) Denial of equal protection, based on denial of the same rights and privileges which other inmates regularly receive, with respect to prompt access to and use of their funds;

7) Denial of his rights under the Supremacy Clause;

8) Denial of freedom of association and to practice religious beliefs, because he was unable to provide love and personal support of his family;

9) Denial of the right to petition the government for a redress of grievances/denial of access to the courts; due to the delay in receipt of the residual benefits check he was unable to hire an

attorney to file a timely writ of habeas corpus on his behalf;

10) Denial of the right to be free from unreasonable seizure of property;

11) Conspiracy to interfere with his civil rights; and

12) Cruel and unusual punishment.

(Doc. No. 27 at 59-70.)

## III. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Dulany v. Carnahan,* 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Webb v. Lawrence County,* 144 F.3d 1131, 1134 (8th Cir. 1998) (citations omitted). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials of allegations in the pleadings; rather, the non-movant must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 1135 (citations omitted). Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Id*.

## IV. ANALYSIS

Defendants' first request, to dismiss the monetary claims filed against them in their official capacities, should be denied as moot, because Plaintiff sued all Defendants except Hobbs in their individual capacities, and the claim against Hobbs in his official capacity requests injunctive relief.

(Doc. No. 27 at 1.)

Defendants next argue that they are entitled to qualified immunity. Qualified immunity protects officials who acted in an objectively reasonable manner and shields a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[4] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009).

**A. Supervisory Claims**

Defendants Banks, Meinzer, Gibson, Mays, Evans, Harris, and Hobbs, state they are entitled

---

[4]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. at 236).

to qualified immunity because supervisory claims are not actionable under § 1983. *Glick v. Sargent*, 696 F.2d 413, 414-15 (8th Cir. 1983). In addition, prison officials' involvement in processing, responding to, or investigating grievances does not support a constitutional claim for relief. *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002). All of Plaintiff's claims against these Defendants are based on their roles in implementing policies, denying grievances and appeals, or supervising employees, and Plaintiff cannot prove their direct, personal involvement in the violation of any constitutional rights.

Plaintiff disagrees, stating he placed these officials on notice of his problems with receiving his monthly checks on time, and with the improper return of the residual benefits check. Furthermore, Defendants Meinzer and Gibson were personally involved in denying the withdrawal requests, based on a policy improperly implemented by Defendant Hobbs.

Having reviewed the parties' submissions, the Court finds that Defendants Banks, Gibson, May, Evans, and Harris are entitled to qualified immunity because Plaintiff's allegations against them are based solely on their supervisory authority or on their involvement in responding to his grievances, neither of which can be a basis on which to establish liability under § 1983. *See Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993) (a supervisor incurs liability only when personally involved in the constitutional violation or when the corrective inaction constitutes deliberate indifference toward the violation); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (quoting *Azeez v. DeRobertis*, 568 F.Supp. 8, 10 (N.D.Ill. 1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates....it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment."))

With respect to Plaintiff's allegations against Defendants Meinzer, Gibson, and Hobbs, the

Court finds sufficient personal involvement in the actions at issue; however, as set forth later in this Findings and Recommendation, the Court finds they should be protected by qualified immunity.

**B. Due Process Claims**

Plaintiff asserts numerous due process claims against Defendants, arising from the delay of monthly VA payments and the delay of receipt of his VA residual benefits check. First, he claims these delays violated the Due Process Clause and ADC regulations which require opening the checks in his presence and adequate notice of returned mail. He also claims that due to these delays, he was unable to purchase certain large commissary items, or send funds home to help support his family. He states that the disability payments are property, protected by due process, and that he possessed a clearly-established right to receive notice that the lump-sum VA check was returned to the VA, citing *Bonner v. Outlaw*, 552 F.3d 673 (8th Cir. 2009).

Defendants state there is no clearly-established right which governs their actions in this case, and they merely followed the instruction of the VA to return the check. Any delay in processing the monthly checks amounts to negligence, which is not an actionable theory of recovery under § 1983. In addition, Plaintiff's frustrations with occasional delays in processing his checks do not support due process violations, because an inmate's liberty interest is limited to freedom from restraint which imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). And Plaintiff provides no evidence that he was actually exposed to any significant hardship as a result of any of these delays.

Initially, the Court notes that Plaintiff's allegations of violations of policy and procedure do not rise to the level of constitutional violations. "[T]he mere violation of a state law or rule does not constitute a federal due process violation." *Williams v. Nix*, 1 F.3d 712, 717 (8th Cir. 1992). Therefore, his claim that ADC procedures require officials to open checks in his presence, or to

provide notice of returned mail, do not in and of themselves support a constitutional claim for relief.

The Court also notes that while Plaintiff claims Defendants improperly returned the residual benefits check, he does not dispute that Defendants' actions were in response to the directive of the VA. The Court is not unsympathetic to Plaintiff's plight; arguably, the delay in receiving the VA check from the time of the settlement in August 2009 until actual receipt of the check in October 2010 is ridiculous. However, although Plaintiff's allegation that Defendants' failure to notify him may state a constitutional claim for relief, the Court finds no clearly-established law which placed Defendants Conrad, Smallwood, and Goldman on notice that their actions in processing the check, verifying the legitimacy of it with the VA, and returning the check at the VA's direction, violated Plaintiff's due process rights. Plaintiff does cite case law which holds that notice of rejection of letters, packages, newspapers, magazines, and other forms of correspondence are considered liberty interests protected by due process. *See Bonner*, 552 F.3d at 677. However, the Court finds that the particular facts of this case are distinguishable from *Bonner*, and it could not locate any case law which would have placed these Defendants on notice that their actions were constitutionally unlawful. Of particular distinction in this case are the facts that Plaintiff's check was accepted in the mail room, sent to bookkeeping, and then to the TFCB, where the employees were not accustomed to receiving a check in excess of $13,000 directed to a prisoner's account. As noted in the answers to interrogatories, these employees were familiar with Plaintiff's monthly receipt of VA checks; yet, a check in excess of $13,000 triggered concern. (Doc. No. 69 at 46.) Defendant Goldman's direction to her employee to check with the VA about the legitimacy of the check was not clearly unreasonable, and the subsequent action in following the VA's direction to return the check also was not clearly unreasonable. While it would have been considerate for someone to have notified Plaintiff of the return, the Court finds no clearly-established case law which mandates such

or renders failure to do so a constitutional violation. Therefore, the Court finds that Defendants Conrad, Smallwood, and Goldman are entitled to qualified immunity with respect to Plaintiff's due process claim concerning the return of the residual benefits check.[5]

Similarly, the Court finds Plaintiff's allegation of delayed monthly payments does not support a constitutional claim for relief. As noted by Defendants, inmate liberty interests are limited to freedom from restraint which imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. at 484. In this case, other than conclusorily stating that he was not able to make large commissary purchases or provide financial assistance to his family members, Plaintiff does not specifically allege how any of these delays imposed an atypical and significant hardship on him.[6] Therefore, the Court finds that no reasonable fact finder could find the violation of a constitutional right by Defendants with respect to the late monthly VA benefit payments.

Finally, the Court finds no reasonable fact-finder could find that Defendants Meinzer, Gibson, or Hobbs violated Plaintiff's constitutional rights when they denied his requests on two occasions to send money to his sister. Plaintiff acknowledges ADC policy which requires specific documentation to support withdrawal requests, but claims that because the first request was submitted prior to the formal enactment of the policy, denial of his request violated his property and due process rights. In his Answer to Interrogatories, Defendant Meinzer explained that "it is

---

[5]Plaintiff's claims that Defendants' actions violated 38 U.S.C. §§ 5120, 5301, and several federal regulations in the Code of Federal Regulations (Doc. No. 27 at 59-60), do not support his constitutional claims here, especially since those statutes and codes govern how the VA processes and delivers payments.

[6]According to deposit receipts presented by Plaintiff, from December 2008 to September 2012, his monthly checks were deposited late (after the 6th of the month) on twelve occasions. (Doc. No. 68 at 3-38.)

standard practice that when sending money out to pay a bill such as attorney fees, that there be an invoice/bill .... It (request) may have been returned to I/M Johnson for these reasons, to simply attach these items and resubmit the check." (Doc. No. 69 at 67.) Similarly, in Defendant Gibson's response to Plaintiff's Interrogatory, he stated that according to the policy in effect at the time, the request could not be approved without some type of bill. (*Id*. at 89.)

To the extent that Plaintiff challenges the constitutionality of this policy, the Court finds Defendants are entitled to qualified immunity from liability. In reviewing the reasonableness of prison regulations challenged on constitutional grounds, courts consider whether a "valid, rational connection" exists between the regulation and a legitimate governmental interest, whether alternative means of exercising the right are available, the impact accommodating the constitutional right will have on guards, inmates and the allocation of prison resources, and the absence of ready alternatives. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987). In this case, the purpose of AD 10-29 is "to provide for the control and accountability of inmates' personal funds, and a mechanism to ensure inmate requests for withdrawal of personal funds...to prevent fraud, money laundering and criminal activity...." (Doc. No. 69-1 at 167.) The policy requires that inmates complete a personal withdrawal request form that includes documentation which verifies the authenticity of the withdrawal. (*Id*.) The Court finds that a rational connection exists between the policy and the interest in maintaining security and preventing fraud and other related crimes by the incarcerated.

Next, the Court finds that the policy does not prevent Plaintiff and other inmates from exercising their property rights with respect to the dispersal of their funds; rather, it merely regulates such, and therefore, an alternative means of exercising Plaintiff's right exists, as long as he documents the reason for the disbursement. Third, as noted in the purpose of the regulation, a lack of documentation could lead to more instances of fraud, money laundering, and criminal activity,

and the policy protects both the inmates and the ADC. Finally, Plaintiff does not suggest a logical alternative rule which would similarly protect his money and prevent on-going criminal activity. Based on such, the Court finds that the regulation is reasonable, within the meaning of *Turner v. Safley*.

And if Plaintiff is attacking the application of the policy to him on two occasions, the Court finds no constitutional violation. Plaintiff does not deny that he did not submit documentation to support his requests, and he does not claim that subsequent efforts to disburse funds accompanied by documentation were denied; in fact, he admits that a withdrawal request for funds for an attorney was approved, after he provided adequate documentation in the form of a letter from the attorney indicating the amount of the legal charge. (Doc. No. 72 at 43-52.) Absent additional allegations or evidence, the Court finds that no reasonable fact-finder would find that Defendants' actions in denying his withdrawal requests due to a lack of proper documentation constitutes a violation of Plaintiff's constitutional rights.

**C. Equal Protection**

The Court also finds Defendants are entitled to qualified immunity on this claim, because Plaintiff fails to allege a constitutional violation. The Fourteenth Amendment's protection requires the government "to treat similarly situated people alike," and extends to prison inmates. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985), and *Turner v. Safley*, 482 U.S. 78, 84 (1987). *See also Rouse v. Benson*, 193 F.3d 936 (8th Cir. 1999). However, although Plaintiff claims that other inmates receiving other types of benefits were not subject to the same restrictions or delays, he does not allege or prove that he was treated different from similarly-situated inmates receiving monthly VA disability benefits.

**D. Access to the Courts**

No reasonable fact-finder could find that Defendants' actions in returning the residual benefits check, at the VA's request, violated Plaintiff's right to access to the courts. Although Plaintiff alleges that if he had received the check earlier, he could have hired an attorney to represent him in his habeas case, he cannot show that Defendants' actions caused an actual injury to a legal claim. *Lewis v. Casey*, 518 U.S. 343, 357 (1996). Plaintiff became aware of the returned check on March 4, 2010, and could have contacted an attorney or used the prison legal resources to file his habeas claim before the August 23, 2010, filing deadline. (Doc. No. 27 at 62.) He cannot support a denial of access to the courts claim based on the tenuous assertion that if he had received the money he would have hired an attorney who would have timely filed a successful habeas petition.

**E. Retaliation**

Defendants also are entitled to qualified immunity on the retaliation claim, because Plaintiff provides no proof to support it. "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewall v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). Plaintiff's allegations of retaliation by Defendant Smallwood are conclusory and unsupported, and therefore, cannot sustain a retaliation claim. *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) ("Because Atkinson's allegations of retaliation were speculative and conclusory, this claim was properly dismissed.")

**F. Cruel and Unusual Punishment**

Plaintiff's allegations that Defendants' actions violated the Eighth Amendment fail to support a constitutional claim for relief. Plaintiff must allege and prove that Defendants' conduct deprived him of the "'minimal civilized measure of life's necessities,'" and reflected "a subjective state of mind evincing deliberate indifference to [his] health or safety...." *Revels v. Vincenz*, 382 F.3d 870,

875 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 342 (1981)). In this case, Plaintiff alleges that as a result of the delay in receiving his checks, he suffered physically from stress, anxiety, great mental anguish and emotional distress. However, Plaintiff alleges no facts from which a reasonable fact finder could find that Defendants acted with deliberate indifference to his health or safety, or deprived him of the minimal civilized measure of life's necessities. Therefore, Defendants are entitled to qualified immunity on this claim.

**G. Miscellaneous Claims**

Plaintiff's remaining allegations, that Defendants' actions violated the Supremacy Clause, his freedom of expression/association/religion, the right to petition the government for the redress of grievances, conspiracy, and intentional infliction of emotional distress, are too vague and conclusory to support a constitutional claim for relief. An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Furthermore, to the extent that Plaintiff alleges state law claims against Defendants, those should also be dismissed. *McLaurin v. Prater*, 39 F.3d 982, 984-94 (8th Cir. 1994).

**V. CONCLUSION**

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 62) be GRANTED;

2. Plaintiff's Motion for Partial Summary Judgment (Doc. No. 65) be DENIED.

3. Plaintiff's Complaint against Defendants Banks, Conrad, Evans, Gibson, Goldman, Harris, Hobbs, May, Meinzer, and Smallwood be DISMISSED with prejudice.

4. Defendant John Doe #2 be DISMISSED without prejudice.

IT IS SO RECOMMENDED this 26th day of June, 2014.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE